All rise. Hear ye, hear ye. This Honorable Appellate Court of the 2nd District is back in session. Pursuant to adjournment, the Honorable Robert E. McLaren presiding. Please be seated. The case on the record is 2-16-1001, Meester Flower Shop & Greenhouse Inc. v. Florists Mutual Insurance Co. v. John Caldwell, defendants at least. Arguing on behalf of these plaintiff's appellants, Mr. Robert E. Fagan. Arguing on behalf of the defendants at least, Mr. Thomas C. Keegan. Thank you, Mr. Fagan. You may proceed. Good afternoon, Your Honors. May it please the Court. Your Honors, this is a classic case similar to David v. Goliath. I represent the little guy who's taking on the big guy. The little guy is Jim DeMeester, who owns a flower shop and has a lawn care service in Freeport, Stevenson County, Illinois. The DeMeester family has owned this for generations, and he has worked in this business all his life. Small family business, depending upon the time of year. It goes from two or three employees to no more than ten during the spring and summer when his busiest time is. Mr. DeMeester needed, because of his lawn service, to become a commercial applicator of herbicides and pesticides. In order to do that, he needed to apply for and receive a license under the Illinois Pesticide Act, which is managed by the Illinois Department of Agriculture and the Director of the Department of Agriculture. In addition to finding out what he had to do there, he went to his insurance agent and he said, not Allstate, not Geico, but a very special type of insurance company that insures mostly florists, or at least they did back in January of 2013. They went and sold him not only his business package policy, which is the equivalent to what I'm sure your honors have heard, a comprehensive general liability policy. I have one for my business. One of the unique things about a comprehensive general liability policy is it normally has 14 to 20 pages of exclusions, and it's very difficult to figure out actually what it actually covers, but I'm sure it covers certain things. But in addition to his business package policy, he was sold, based upon his telling his insurance agent that he needed to apply for this commercial applicator's license, an actual endorsement, an herbicide-pesticide endorsement, which, according to the florist's mutual insurance company, was marketed as providing what the statute required. And the statute, your honors, I think is the key to this case, because if you look at all the cases cited by my opponent in his brief from all of the other states, none of those states have this statute, and the statute, I think, is what controls. The statute's declaration of purpose we have in our brief. Basically, the Illinois legislature has determined that these types of products, these types of herbicides and pesticides are very dangerous, but they also are absolutely necessary. Because they're dangerous and because the legislature feels they're necessary, they wrote this statute. And the statute says if you want to become a certain type of applicator, and I believe there's 11 different types of licenses you can get, but if you want to be a commercial, if you want a commercial applicator's license, you have to take a test, and you either have to post a bond, which has specific amounts related in the statute. That's the first part of the statute, Section 10. Why does the statute apply to your claim? Because if you were saying your argument on behalf of the law owners or the law owner's insurance companies in a subrogation claim, certainly the statute might apply to them. How does it apply to your client who, through the negligence of his employees, damaged these laws? Thank you, Your Honor. Yes, indeed. What he did, what Mr. Demeester did, was rather than, I think he put the insurance company on notice, but rather than wait for the insurance company to go through any type of rather long litigatory process, he made his customers whole, and he reseated or resodded these laws at his own expense, and then he filed a claim asking for reimbursement. He did what most small business owners would do. So was he paid by the law owners for the first installation? He was paid by the law owners to care for their lawns and to spray them. Right, right. And the laws were ruined. Yes, sir. Now he wants the insurance company to pay for him to go back and redo the work that he did negligently. He's already done that, Your Honor. I know, but he doesn't want to pay for it. He wants the insurance company to pay for it. Yes, sir. Okay, so I don't get the logic of that. What do you believe the intent of that statute is? I believe it states what the intent is, Your Honor, in the Declaration of Purpose, and it actually says, and if I could answer Your Honor's question, Mr. Demeester felt that he was insured for anything that happened that went wrong as long as he was following or his employee was following the statute. And in this situation, it was a catastrophic negligent act on the part of his employee. Did he contact the insurance agent or the insurance company prior to resetting the customer's lawns? One of the reasons, Judge, one of the major problems with the case at this moment is we're looking at a complaint and a motion to dismiss. It's a very, very, very scant record. We have nothing in the record, and I, quite frankly, don't even know the answer to that question. I was not the trial counsel. I handled the briefs on appeal. But one of the things I think that this Court can and should do is send this case back for the record to be developed. I think some of the most important questions that need to be answered can be answered from the insurance agent, from the application for the insurance, and also testimony from the director of the Department of Agriculture or whoever in the Department of Agriculture handles these types of petitions. But to answer Your Honor's question, the intent of the statute is to... It's to protect individuals from these harmful substances. Exactly. It is essential to our general health and welfare that they be regulated to prevent adverse effects on man and his environment. And the statute goes on to suggest that any damage to an individual or to property should be compensated. So wouldn't it have been perhaps, as Justice Burke said, had Mr. and Mrs. Jane Doe or whomever Juan was harmed had filed a claim with this insurance company, they probably would have been covered, correct? I don't think so, Your Honor, because the way the statute is set up, the two alternatives are that the commercial applicator, as part of his or her application, would either post a bond and probably go to an insurance company to get the bond or file a certificate of liability insurance with the Department of Agriculture. Our contention is that this statute controls, in other words, any damage to a person or to property that is caused by the application of a herbicide or pesticide that this statute covers will be covered under either this liability insurance or this bond. And as I suggest in my reply brief, if Mr. Demeester had decided to post a bond, he would have done exactly what he's already done. His customers would have probably applied to the Illinois Department of Legislature against the bond, and he would have been financially responsible for paying for this catastrophic event, this negligent act on the part of his employee. Mr. Demeester decided to take the alternative method and to purchase the liability insurance. Well, let me ask you this. If you're in a car accident and you decide to pay an individual that you hit, could you then turn around and go to your insurance company for them to subrogate you? No, I don't think you could. However, again, this statute changes the type of analogy that Your Honor is referring to. In other words, to drive in the state of Illinois, we don't have to post a bond, nor do we have to come up with a certificate of liability insurance. The law requires us to insure our automobiles. Yes, but in this instance, we have an individual that is either posting a bond that he will personally be financially responsible for or buy liability insurance. And that certificate of liability insurance has to be inspected by the Department of Agriculture, and then whether or not it meets that department's requirements and the statute's requirements, he or she is issued the commercial applicator's license. So, in other words, Mr. Demeester attempted to defray some of the liability that he would potentially be looking at by buying the insurance. So he buys the endorsement. And, Your Honor, if you look at the language of the endorsement, it's very clear. It says, Read this closely. This changes our policy. But, again, I refer, Your Honor, back to the statute. And I think the statute controls. Every insurance policy or bond shall contain a provision that will not be canceled or reduced by the principal or by the insurance company except upon 30 days' written notice to the director of the Department of Agriculture. So what I might be predicting... So what does that mean? That just, again, is to ensure that they have coverage. That's what that means. Well, that's what we're here for, Your Honor, asking the court to decide what it means. In other words, if after this license was issued, after Mr. Demeester provided the requirements requested by the statute to the satisfaction of the Department of Agriculture, and my argument is that at least at that point, either this bond or this certificate of liability insurance had to be some equivalence at that point. If, indeed, it passed the requirements of the Department of Agriculture, then I do not understand how the insurance company and his insurer can now go back and say that there are certain exclusions which I believe violate the statute. The statute is very broad. You're basically arguing that your client is a statutory beneficiary of that statute, of that law, right? I think I am, Judge, and I am arguing, I think, that the insurance company or the bond holder or the bond person who gives the bond would be personally, it would be strict liability. Did the plaintiff here suffer any personal injury or any physical damage? Himself personally? Yeah. No, Your Honor. He caused the damage. Well, he's the plaintiff, yes. Right. So the Pesticide Act, the way I read it, is there to protect persons who have suffered personal injury or property damage. That wasn't your client. It was my client's, and he felt his responsibility to make his customers whole. And basically what the statute suggests is that any damage or any personal injury that is caused by the application of these pesticides or herbicides, and there can be no doubt that these lawns died because of the negligent application of the wrong herbicide. You would agree that your client is free to enter into contracts containing whatever provisions they contain with the insurance company, correct? As long as there's no statute that brings those two parties into the same umbrella. Right. Again, we get to this question I asked earlier, and Justice Shostak just asked about, in essence, whether your client is a statutory beneficiary of this law. Yes, I think he is. As are the citizens of the state of Illinois? Well, you know, there's some language in the case that I think was cited by opposing counsel, Great American Insurance v. Brad Movers, that says while the rights of an insurer vis-a-vis the insured are governed by the terms of the contract, the claimants here are statutory beneficiaries whose rights cannot be defeated by the terms of the contract. And in that case, basically, they're in the issue. What I'm getting at is that there's a private contract here, and the rights between the insurer and the insured are governed by the contract. But these other people whose lawns were damaged would be statutory beneficiaries whose rights are not governed. They're governed by the statute, not by the contract. I would agree with Your Honor, except, again, the insured and the insurer can enter into a contract, and most insurance contracts, I would absolutely agree with where Your Honor is going. But I think this statute changes the overall picture. I think that the insurance company and the insured are bound by the statute, and they cannot violate the terms of the statute. So when I say strict liability, I say any damage, either to an individual or to property, up to the limitations are what the statute provides as far as my financial limitations are concerned. So do you think that this contract or this statute alters the concept that if you are contributory negligent by more than 50 percent, that you should be allowed to recover? And I know where Your Honor is going as far as contributory negligence in, like, an automobile accident situation. I'm going, comparative negligence relates to torts based upon negligence, I believe. I don't think it just relates to automobile cases. I would suggest to Your Honor that this is more a case that was birthed through negligence and is not controlled by contract or warranty. So in other words, there is no question that these lawns died. It's not a question of who's responsible or who is financially, who my client might be able to go after as far as the man who actually did the spraying. Okay? I think that if you are licensed, and this gentleman was through my client himself, if you are licensed and if you are following the dictates of the statute and following the requirements of the statute, then the statute prevails. So any damage up to the financial limits that the statute provides, as long as the damage has been caused by the application of the pesticide or herbicide. You'll have an opportunity to make the follow-up, sir. Thank you, sir. Thank you. Mr. Keegan. Thank you, Your Honor. May it please the Court, my name is Thomas Keegan, and I represent the Appalachian Forest Mutual Insurance Company and its employee, John Calloway. Mr. Calloway was only named in count three. And count three was dismissed with prejudice and not challenged, so therefore I would ask that the Court affirm that at a bare minimum. Count two was also dismissed and not challenged, so it should be dismissed, affirmed as well. Count three was the negligent misrepresentation claim. Count two was the vicarious liability claim. Count one, which I'm coming back to now, was the claim for a declaratory judgment that Demeester was entitled to indemnity. And I just actually want to address briefly some of the questions that the Court asked. The policy controls the relationship between these two parties. Well, let's talk about the policy a little bit. What did it actually cover? I mean, it's insurance that did not cover property damage caused by the negligent work of the employees. So it's kind of like driving a car and saying, you know, I'm going to give you an insurance policy on your car, but I'm not going to cover liability if you're negligent when you're driving. Well, that's not actually true, Your Honor, with all due respect, because this is a business package policy. It's more than just liability coverage. It was property coverage, comp coverage, liability coverage. But I think your question goes to really the liability coverage and what was covered. And as we stated in our brief on this particular issue, for example, if they had negligently sprayed a pet, a person, a neighbor's lawn, the bushes that was outside the area of what they were working on, the swimming pool. And quite frankly, there's a lot of claims out there when they overspray and they hit the wrought iron or they hit the metal fencing, and the metal fencing starts to corrode from the pesticide or herbicide that they used. There's lots of claims like that. So there's a lot that it covered. If that were the case, it was a pet or it was the pool, and if the demesters paid the client and then came and asked for the money from Flores Mutual, then would they have covered it? Well, typically, Your Honor, that's not the way it would happen. And I understand you're asking what if that happened.  It is what happened here. You're saying they aren't covered because they caused the damage to an area that they were working on. Correct. But what if they caused the damage to an area where you allege it is covered, something that they weren't working on? Would they have been covered in that case? So normally they would give notice of that claim. The insurer, if they believed it was covered, would accept the duty to defend. They would go forward and they would defend them in that action, and then they would decide whether or not to settle that claim with the people who owned the pet or the people who were injured. If demester went ahead and settled that claim on his own, after giving notice and then accepting a duty to defend, in all likelihood there wouldn't be coverage for that scenario because he would have violated the consent to settlement provisions are in the policy and or he would have voluntarily paid that settlement, in which case that wouldn't be covered either. So going back, does this policy violate the statute and public policy as set by the statute as it relates to the lawn owners? I mean, if instead of demester sitting at that table, it was John Q. Public, whose lawn was severely damaged, sitting at that table, and you look at the statutory language and the purpose of the act, I mean, it seems like an exclusion, excluding where and what was actually done, might potentially violate public policy. I don't think it does, and I don't think it does based on the holdings in the progressive and founders cases that we cited too in our briefs. Those were cases. Progressive is a case where the Illinois Supreme Court I know we all read progressive, but the issue, though, is whether this case is more closer to progressive or Smith. You know, Smith is a case that said that you have to cover when someone's negligent. Well, you have to cover the omnibus passenger or the omnibus driver. You have to cover the omnibus driver if that driver's negligent. And so here, I mean, you're talking about all the things that this policy covered, spraying here and spraying there, but if you're actually working on the lawn and you damage the lawn, you know, why wouldn't that be more akin to the omnibus permissive? Well, it's not because the omnibus provision said you have to cover permissive users. In fact, that's how progressive and founders distinguished the food delivery exclusion and the reasonable belief exclusions, because it didn't specifically say you have to cover everything, even though the language of those statutes was it's designed to protect the public, just like these are. You have to have liability insurance. Yet the court went on to talk about freeing the contract, okay, and not finding the statute to overrule a policy, except in those rare circumstances. But even if that was the case, Your Honor, even if the policy violated the statute as to regreed the landowner, okay, now you move into those second set of cases, which is the great American versus Brad Movers case and the Kroll case. Those two cases found that a policy did violate, for lack of a better term, a statute, or better yet, was inconsistent with the statute, okay? But in both those cases they said that has nothing to do with whether or not there's coverage for the policyholder. Both the late notice defense in the Kroll case and the, excuse me, the late notice defense in the Brad Movers case and the underage defense in the other case, okay, they upheld both of those. They said both of those would apply as to the policyholder. And quite frankly, the case that's here is the policyholder, not the case of the agreed landowners. And the way the agreed landowners would have gotten here is they would have sued and then we'd be in a garnishment situation. And something I want to briefly address is there was a question about the intent of the statute. Well, the intent of the statute when it relates to insurance is financial responsibility to make sure that the person is financially responsible for the losses, not to reimburse the person who caused the damage. There's no issue here about whether or not there's a financial responsibility implicated. The people's loans were fixed. But I'd like to take one moment to go into the reply brief, because one of the arguments that Demeester made for the first time in the reply brief is that a bond and an insurance policy should provide an equivalent scope of liability. Okay. Well, and I actually took, Your Honor, from the Illinois Construction Law Manual, Section 14.2. This wasn't cited in our brief because it was raised in the reply. I sent copies of this to counsel yesterday. I have copies for Your Honor. But the point is on page 3 of the reply brief, Demeester argues that since the Act requires either the posting of a surety bond or an insurance policy, the two should be equivalent in terms of the scope of liability. This argument assumes that if there was a surety bond, it would apply and pay for the agreed landowner's claims. The problem is that this assumption misconstrues the application of a surety bond. And if you go through the law manual, it has all the citations, but I'm going to shortcut some of the citations. But in suretyship, the risk for loss remains with the principal, who is Demeester here. The surety merely lends its credit to guarantee payment or performance if the principal defaults. Here, after the agreed landowners provided notice, Demeester cured the breach. And thus, the surety would have paid nothing to the agreed landowners or to Demeester. Significantly, even if the surety had paid something to the Department of Agriculture to satisfy the claims of the landowners, Demeester would have been required to indemnify the surety. And thus, the result would be the same whether there was a surety bond or an insurance policy. Either way, Demeester would not get paid to correct its incorrectly performed work. In the case of a surety, the surety issues the bond in exchange for a premium and the execution of a general indemnity agreement. The indemnity agreement indemnifies the surety against all losses, costs, and damages incurred as a result of the execution of the surety bond, thereby creating a contractual cause of action for the surety. The indemnity in this case, Demeester, are required under the indemnity agreement to pay all the money to the surety for all of the losses that they become liable to pay. Is there anything in this insurance contract that provides for indemnification of Mr. Demeester? Is there an indemnification clause in this contract? Well, the policy, the general liability provision provides both defense and indemnity. But the indemnity is against judgments, not against voluntary payments. Okay. So the insurer company would pay. The insurance company would pay. If there was a judgment. If there was a judgment, you're talking about the insurance company. Well, our company wouldn't pay to indemnify the surety. No, no, no, not the surety. It just covers up the insurance policy by itself. If something slipped and fell and it was covered by the policy, the speaker doesn't pay, Demeester doesn't pay, and they don't indemnify you. Demeester doesn't indemnify you. No, absolutely not under that scenario. No, absolutely not. It's covered. Mr. Fagan, just before he sat down, said that he is requesting that your client indemnify his client. So I was asking you about was there an indemnification clause that would relate to the situation where your client would indemnify his client perchance on the basis that he might have voluntarily settled the case, which is what I think the facts are in this case. Those are the facts of this case. If he gave notice and if the claim was denied and if there turned out to be coverage, then conceivably there are circumstances on a covered claim where he could be indemnified for that. If in fact it was a covered claim, which it isn't here. But one other thing that I want to go to is they close their reply brief with an interesting comment. If you look on page 5 of 7, that's actually the last page, it says, it's the very last line right before the conclusion, if Flores Mutual are going to mount a defense, it is going to be that Demeester did not follow the law. Question, did the Demeester employee not have appropriate licensing? Was he underage? Was he doing something else that could in fact apply? But it was not a lack of coverage. This is very telling, okay, because they can't have it both ways. He stood up here and he told you it's strict liability. Our client owes no matter what. Then because they know that they have a problem with the Brad Hoover's case and with the Kroll case and the underage issues, they say, well, that would be a defense. Why would that be a defense? That's completely inconsistent with their argument. It wouldn't be a defense under their argument. Under their argument, which Mr. Fagan said, and I credit him for that, it's strict liability. And there's nothing in the act that mandates strict liability for the person that causes the damage. In fact, that person, in this case Demeester Corporation or entity, is not even within the class of persons that the act was designed to protect. And there's nothing in the pesticide herbicide endorsement which states that it in any way overrules the business risk exclusions that are in the policy. And we talked about this in our brief, but imposing strict liability on the insurer for their actions to the portions of the work they're performing on would turn this into a performance bond. It would turn it into a situation where there was automatic indemnity, automatic coverage for anything they do to anything they're working on. And the second district in several cases has said that's not the right result. It wouldn't be fair to the insurer to turn it into a performance bond. And that's basically what they're asking for here. They're asking for the court to turn it into a performance bond. The only other point I would make, Your Honor, and I really don't know if we're disputing this. I didn't think we were because of the way the briefs were written, but there's no doubt that the business risk exclusions apply. They didn't even contest that in their brief. When we pointed that out in our brief, they said, well, we do contest it because it's something we said in our complaint. But they didn't contest it here. They went for the home run with the statute applies. They didn't contest that it's excluded as between the two parties. And that really is the end result here. It is excluded as between the two parties. The only final point I'll make, Your Honor, because I have time and I like to do it myself. Unfortunately, maybe that's not a good thing. But the only final point I will make is they make references to things about this was represented or that was represented. That was count three. Those allegations weren't even in count one. They were in count three. Count three was dismissed with prejudice. They never put in any actual allegations of that sort. This isn't a case about representations or anything like that. It's a straight case based on the claims that they had, which there's no disputed facts, and the policy that should have been attached to the complaint that we attached to our motion. They were OK with because we needed to get it in front of the court. OK. And that the court looked at and said there's no coverage. If Your Honors have no further questions, I have nothing to add. I have nothing. Thank you. Thank you. Thank you. Mr. Fagan. Would the court like a copy of the portion of the construction law manual? Should I give it to you? Yeah, give it to them. One or two? I have one for each of you. I brought one for each of you. OK. My apologies. Thank you, Your Honor. Thank you, Mr. Keegan. Thank you. Judge Mr. Demeester had two choices. He could post a bond or he could post a certificate of liability insurance. He could go out and he could buy insurance. He knew that if he posted a bond, he would be financially responsible for any damage to either an individual, personal injury, or to their property. He decided to purchase the insurance, the liability insurance, and to limit his risk. So if this herbicide-pesticide endorsement does not supersede the business risk, what does it do? What does it do? It protects people or property that they damaged that would be covered under the policy, correct? That's the key question. Covered under the policy? Should it have been covered under the statute? The statute is very broad. The policy reduces that liability coverage that the statute requests, and that's our argument. You are only appealing count one, correct? Yes, sir. And counsel indicated in the vernacular, I guess, that you went for the whole run on the statute. Do you contest that the actual language of the policy excludes the work that was done? We do. We contest that the business risk exclusions apply in this instance because of the action of the application of the herbicide, which we believe is now covered by the statute, and the rider. The rider actually takes the pollutant exceptions out of the policy, and if you follow that rather circuitous route that Flores Mutual gets to their denial, my understanding of how it works is you buy the endorsement, then all of the pollutant exclusions that are found in the policy are now void because you bought the herbicide-pesticide endorsement, but the exclusions that now kick in are the business risk exclusions. We feel that Mr. Demeester and the statute preclude those, what I'll consider, what I'll classify as your comprehensive general liability policy-type exclusions that supersedes those, and in fact, Judge Jeffrey said in his opinion, unless a specific endorsement is purchased which would cover this, then there is no coverage because of the business risk exclusions. No appellate court has ever interpreted this statute, so Judge Jeffrey actually asked trial counsel to provide legislative intent, and I don't believe Mr. Keegan can correct me if I'm wrong. I don't think they found any. Well, would putting aside business risk exclusion or even saying there was no business risk exclusion, the fact that you settled out with the property owner, thereby precluding the insurance company from defending the claim, does that have anything to do with anything? Your Honor, my client is, I think if you put it into the factual circumstance of a small town in a small county where he has a certain number of customers who he depends upon for the livelihood of his business, if he damages those customers, his business ends. I understand that, but I guess we can't apply laws differently in small towns than we can in Chicago or we can in a larger county. So, you know, you have the insurance company, you put them on notice, they have a right to either say let's settle this claim or we're going to defend it. He took that away from them. Why is it that the insurance company then should subrogate him when they didn't have the opportunity to investigate and defend the claim? If we had the opportunity to expand this record, and I don't know this, Your Honor, but I would venture to guess that Mr. Demeester completely took pictures and recorded everything that occurred, could prove that the lawns were, I don't think there's even a question that the lawns were killed, and that there was damage. And this statute suggests that if the application of a herbicide or pesticide causes personal injury or physical damage to property, it should be covered. Thank you, sir. Thank you, Your Honor. Thank you. We'll take the case under advisement. The court's adjourned. Thank you, Your Honor.